UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIJAH SAMUEL IBANGA,<br><br>        Petitioner,<br>v.<br><br>ERIC H. HOLDER, United States Attorney General,<br><br>        Respondent. | Case No. 3:13-cv-2546-GPC (WVG)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**(ECF NO. 1)** |

# INTRODUCTION

Petitioner Elijah Samuel Ibanga ("Petitioner"), proceeding with counsel and in forma pauperis, is currently in the custody of the Department of Homeland Security ("DHS") pursuant to 8 U.S.C. § 1226(c) ("Section 1226(c)" or "§ 1226(c)"). (ECF No. 8, Ex. D, at 30.) On July 22, 2013, Petitioner filed in the United States Court of Appeals for the Ninth Circuit a petition for review of an order entered by the Board of Immigration Appeals ("BIA") on June 21, 2013, reinstating Petitioner's removal proceedings for a second time. (ECF No. 1 at 1.) The Ninth Circuit construed the petition as an original petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 ("Petition"), and transferred the Petition to this Court. (ECF No. 1 at 4.) Eric H. Holder ("Respondent") filed a return, asserting the petition should be dismissed.

(ECF No 8 at 2.) Petitioner filed a traverse. (ECF No. 10.) After a thorough review of the issues and the documents presented, and for the reasons set forth below, the Court **DENIES** the petition for writ of habeas corpus.

## BACKGROUND

### I.     Procedural History

The facts underlying the Petition are largely undisputed. Petitioner, a native and citizen of Nigeria, was admitted to the United States as a lawful permanent resident on October 22, 1980. (ECF No. 8, Ex. A at 17.) On December 4, 1992, Petitioner was convicted of violating California Penal Code ("CPC") § 288(b) for Forcible Lewd Acts on a Child under 14 and CPC § 288.5(a) for Continuous Sexual Abuse of a Child and sentenced to twenty-four years in prison. (ECF No. 8, Ex. B at 18.) On January 13, 2009, DHS served Petitioner with a Notice to Appear ("NTA") and transferred Petitioner from a state psychiatric hospital to the custody of DHS. (ECF No. 8 at 2.) DHS commenced removal proceedings against Petitioner as an aggravated felon. (ECF No. 8, Ex. D at 28.) On September 9, 2010, an immigration judge ("IJ") terminated Petitioner's removal proceedings, finding DHS had not served Petitioner with the NTA in accordance with DHS regulations regarding service of process on individuals with mental competency issues. (ECF No. 8 at 2.) DHS appealed the IJ's decision, and on March 7, 2011, the BIA affirmed the IJ's decision and dismissed the appeal. (ECF No. 8 at 2.)

On March 11, 2011, DHS re-served Petitioner with the NTA. (ECF No. 10 at 3.) On December 7, 2011, the IJ again terminated removal proceedings, with prejudice, after finding the DHS again failed to properly serve the NTA on Petitioner as someone with mental competency issues. The IJ specifically found Petitioner was "not capable of pleading to charges" and "incompetent mentally." (ECF No. 8-1 at 29.) DHS appealed to the BIA. (ECF No. 8 at 3.)

On June 21, 2013, the BIA vacated the IJ's December 7, 2011 decision, reinstated removal proceedings, and remanded the case to the IJ. (ECF No. 8 at 3.) On

July 22, 2013, Petitioner filed his petition in the Ninth Circuit for review of the BIA's June 21, 2013 decision. (ECF No. 1.)

On August 27, 2013, the IJ administratively closed Petitioner's removal proceedings per the petition for review before the Ninth Circuit. (ECF No. 8, Ex. K.) DHS appealed the IJ's order to the BIA and that appeal remains pending. (ECF No. 8 at 3.) On October 21, 2013, the Ninth Circuit found it did not have jurisdiction to review the BIA's June 21, 2013 order because it was not a final order of removal. (ECF No. 1 at 4.) The Ninth Circuit construed Petitioner's argument that failure to review the interlocutory BIA order may implicate the Suspension Clause as an original petition for habeas corpus and transferred it to this Court. (ECF No. 1 at 4.)

## II.     *Franco-Gonzalez* Class Action

In 2013, Petitioner was named a member of the Franco-Gonzalez v. Holder class action. (ECF No. 10 at 3.) There, plaintiffs, representing a class of mentally incompetent individuals in DHS custody without counsel, claimed the right to appointed counsel, the right to release under the Immigration and Nationality Act, and the right to a detention hearing. Franco-Gonzalez v. Holder, No. CV 10-02211, 2013 WL 3674492, at *2 (C.D. Cal Apr. 23, 2013). On April 23, 2013, the court overseeing the class action ordered that (1) plaintiffs were entitled to appointment of a "qualified representative" to assist them in their removal and detention proceedings, and (2) all class members be afforded a bond hearing before an IJ after 180 days in detention, at which the government must justify further detention by proving the alien is a flight risk or danger to the community. (ECF No. 8, Ex. H, at 51, 56.) As a result, the Executive Office for Immigration Review appointed Petitioner a "qualified representative," (ECF No. 10 at 4), and on May 21, 2013, petitioner was afforded an IJ bond hearing, at which the IJ denied bond after finding Petitioner posed too great a danger to the community. (ECF No. 8 at 3.) Petitioner appealed the custody decision to the BIA on the basis that he had demonstrated good cause for a continuance of his bond hearing. (ECF No. 8 at 3.)

On November 7, 2013, the BIA sustained Petitioner's appeal of his bond decision and remanded the matter to the IJ for Petitioner to "be given a further opportunity to present any evidence in support of his release on bond." (ECF No. 8 at 3.) On January 30, 2014, the IJ again found that Petitioner was a danger to the community and denied bond. (ECF No. 12 at 3.)

On February 4, 2014, an IJ held a master calendar hearing in Petitioner's removal proceedings, which was continued to March 12, 2014 upon Petitioner's attorney's request. (ECF No. 12 at 1.)

## DISCUSSION

Respondent contends Petitioner seeks review of an interlocutory order of the Board of Immigration Appeals ("BIA") reinstating his removal proceedings and remanding the matter to the immigration judge, and under the REAL ID Act, this Court lacks jurisdiction to review challenges to decide legal questions "arising from" removal proceedings. (ECF No. 8 at 2.)

Petitioner responds that he filed a petition for review mainly out of concern for his prolonged and possibly indefinite detention while DHS grapples with its own service of process rules regarding persons with mental competency issues. (ECF No. 10 at 7.) Petitioner contends the lack of judicial review available to him while trapped in this indefinite cycle of terminating and reinstating his removal proceedings violates the Suspension Clause, and, as such, this Court has jurisdiction over the matter as an original petition for writ of habeas corpus under 28 U.S.C. § 2241. (Id.)

Respondent counters that, to the extent Petitioner is challenging his detention, the petition should be dismissed because (1) Petitioner has already sought and obtained relief relating to his detention as a class member in the Franco-Gonzalez action, and (2) he has not exhausted his administrative remedies. (ECF No. 8 at 2.)

Petitioner responds that (1) his issues are distinct from those presented in the Franco-Gonzalez action, and (2) because the exhaustion requirement is prudential and not jurisdictional, the Court should review the Petition despite his failure to exhaust

administrative remedies. (ECF No. 10 at 7-10).

## I. Legal Standard

"A federal district court may grant a writ of habeas corpus if, as Petitioner contends here, the prisoner is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Espinoza v. Aitken, No. 13-CV-00512, 2013 WL 1087492, at *2 (N.D. Cal. Mar. 13, 2013).

Petitioner is currently detained under Section 1226(c), which "subjects certain aliens who are deportable or inadmissible on account of their criminal history to mandatory detention pending proceedings to remove them from the United States." Rodriguez v. Robbins, 715 F.3d 1127, 1131 (9th Cir. 2013). The government's "statutory mandatory detention authority" under § 1226(c) is "limited to a six month period subject to a finding of flight risk or dangerousness." Id. at 1133. Detention becomes "prolonged" at six months, at which time the government must provide the detainee with a bond hearing. Id. At 1139.

## II. Analysis

### A. Jurisdiction

Pursuant to the REAL ID Act of 2005, a petition for review to the appropriate court of appeals is the "sole and exclusive means for judicial review" of a final order of removal, deportation, or exclusion, and district courts do not have statutory or non-statutory habeas jurisdiction over such orders. See 8 U.S.C. § 1252; Martinez–Rosas v. Gonzales, 424 F.3d 926, 928-29 (9th Cir. 2005). Here, Petitioner's removal proceedings are still ongoing, and there has been no final order of removal. (ECF No. 10 at 5.) However, the REAL ID Act only eliminates habeas review over challenges to removal orders; it does not preclude habeas review over challenges to detention that are independent of challenges to removal orders. (ECF No. 10 at 6) (citing H.R. Rep. No. 109-72, at 175 (2005), reprinted in 2005 U.S.C.C.A.N. 240, 300).

Respondent argues that Petitioner is "asking this Court to review legal issues that 'arise from' his ongoing removal proceedings," construing the petition as to "primarily

challenge the interlocutory BIA decision to reinstate removal proceedings," and not as an "independent challenge to [Petitioner's] detention." (ECF No. 8 at 4-5.) The focus of the Petition, however, is not the BIA's decision itself, but rather Petitioner's "continued detention despite his removal case having been twice terminated." (ECF No. 10 at 7.) Petitioner is challenging the "cycle of continued removal proceedings" as raising "serious constitutional concerns" under the Suspension Clause. (ECF No. 10 at 9, 11.) Petitioner's habeas challenge to the ongoing cycle itself is an independent challenge to Petitioner's detention, and does not "arise from" his ongoing removal proceedings. Accordingly, the Court has federal habeas jurisdiction over the Petition pursuant to 28 U.S.C. § 2241.

### B.   Failure to Exhaust Administrative Remedies

Respondent further asserts the Court should dismiss the Petition because Petitioner has not exhausted his administrative remedies. (ECF No. 8 at 2.) Petitioner responds that the exhaustion requirement is prudential rather than jurisdictional, and as such, because of the circumstances of Petitioner's case, the Court should waive the exhaustion requirement. (ECF No. 10 at 11.)

28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004) (citing Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir.2001)). Nonetheless, courts "require, as a prudential matter, that habeas petitioners exhaust available judicial remedies before seeking relief under § 2241." Id. Although courts "have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered." Id. Prudential considerations that weigh in favor of requiring agency exhaustion are whether "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Noriega-Lopez

v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003).

In Noriega-Lopez, after the IJ found DHS had failed to prove by clear and convincing evidence that the petitioner had been convicted of the felony for which he was being deported under 8 U.S.C. § 1227, the BIA reversed this finding and sua sponte ordered the petitioner be removed from the United States. Id. at 877. The petitioner filed a habeas petition, which the district court denied on the merits despite the fact that petitioner had failed to file a motion for reconsideration before the BIA. Id. The Ninth Circuit found the district court had properly waived the exhaustion requirement where (1) there was a proper record available, (2) there was "no deliberate bypass of the administrative scheme," and (3) the only avenue of relief available to the petitioner "was not available as of right, so there [was] no basis for concluding that the filing of such a motion [for reconsideration] would likely have precluded the need for judicial review." Id. at 881. Similarly, in Marquez v. I.N.S., the petitioner, originally from Cuba, had been detained indefinitely because Cuba would not accept his repatriation, despite case law limiting detention without a bond hearing to a six-month period. 346 F.3d 892, 896 (9th Cir. 2003). The Ninth Circuit found that, under these circumstances, the district court properly waived exhaustion. See id. at 897.

Conversely, in Leonardo v. Crawford, the government had afforded the petitioner a bond hearing, at which the IJ denied bond. 646 F.3d 1157, 1159 (9th Cir. 2011). Rather than appeal this decision to the BIA, the petitioner "pursued habeas review of the IJ's bond determination." Id. The court found such a short cut "improper," and held that the petitioner "should have exhausted administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision." Id. at 1160.

Here, at Petitioner's second bond hearing, the IJ again denied bond, finding Petitioner to be a "danger to the community." (ECF No. 12 at 1.) "Once an alien has received a bond hearing before an IJ, he may appeal the IJ's decision to the BIA." Leonardo, 646 F.3d at 1159. If an alien is "dissatisfied with the BIA's decision, he may

then file a habeas petition in the district court, challenging his continued detention." Id. Thus, because Petitioner sought habeas review prior to appealing the IJ's second bond determination, Petitioner has not satisfied the exhaustion requirement.

Petitioner argues, however, that, "provided the length of his detention and the lack of remedies available to him, his case [weighs] in favor of waiving [the exhaustion] requirement." (ECF No. 10 at 10.) Furthermore, because Petitioner's case has already been before the BIA on numerous occasions, not only is there a "proper record available," but waiving the requirement here would not "encourage the deliberate bypass of the administrative scheme." Noriega-Lopez, 335 F.3d at 881. Similar to Marquez and Noriega-Lopez, where further administrative review likely would have obviated the need for judicial review, further administrative review here is not going to "preclude the need for judicial review" because Petitioner is challenging the continuous and indefinite cycle of administrative review itself. Id. Accordingly, the Court concludes Petitioner here has "demonstrated grounds for excusing the exhaustion requirement." Leonardo, 646 F.3d at 1161.

### C. Petitioner's Participation in the Franco-Gonzalez Litigation

"When a complainant is a member in a class action seeking the same relief as the individual complaint, a district court may dismiss those portions of the complaint which duplicate the class action's allegations and prayer for relief." Pride v. Correa, 719 F.3d 1130, 1133 (9th Cir. 2013) (citing Crawford v. Bell, 599 F.2d 890, 893 (9th Cir. 1979)). "A court may choose not to exercise its jurisdiction when another court having jurisdiction over the same matter has entertained it and can achieve the same result." Crawford, 599 F.2d at 893. A district court may not, however, dismiss allegations in an overlapping complaint that "go beyond the allegations and relief prayed for in the class action." Pride, 719 F.3d at 1133.

In Franco-Gonzalez v. Holder, the court addressed a habeas class action brought on behalf of individuals with "a serious mental disorder or defect that may render them incompetent to represent themselves in detention or removal proceedings, who

presently lack counsel in their detention or removal proceedings," and "who ha[d] been detained for more than six months." 2013 WL 3674492, at *2. The court held that:

(1) the "plaintiffs are entitled to the reasonable accommodation of appointment of a Qualified Representative to assist them in their removal and detention proceedings," and

(2) "class members who are detained beyond a reasonable period are entitled to a custody redetermination hearing, at which the Government bears the burden of justifying their continued detention by clear and convincing evidence." Id. at *9, 13.

On May 21, 2013, the government afforded Petitioner an IJ bond hearing, at which the IJ denied bond after finding Petitioner posed too great a danger to the community. (ECF No. 8 at 3.) Petitioner appealed, and on November 7, 2013, the BIA sustained the appeal and remanded the bond proceedings to the IJ for Petitioner to "be given a further opportunity to present any evidence in support of his release on bond." (ECF No. 8 at 3.) On January 30, 2014, the IJ again found that Petitioner was a danger to the community and denied bond. (ECF No. 12 at 3.)

Here, while Petitioner is again challenging his prolonged detention under § 1226(c), Petitioner also argues the Suspension Clause is implicated because the "cycle of continued removal proceedings is problematic" and "allows the Government to continue to re-serve the NTA unless and until [Petitioner] is either required to move forward with removal proceedings despite his mental state, or is issued an order of deportation, all while remaining detained." (ECF No. 10 at 9.) It is thus clear that Petitioner is challenging more than his prolonged detention; he is challenging his indefinitely long cycle of removal proceedings, which have been twice terminated and reinstated due to DHS's failure to properly serve Petitioner with the NTA. (ECF No. 10 at 9.) The Court therefore concludes Petitioner is not precluded from raising his Suspension Clause claim here.

/ / /

**D.     Suspension Clause**

The Constitution provides that "the privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it." U.S. Const., Art. I, § 9, Cl. 2. The Suspension Clause "ensures that, except during periods of formal suspension, the Judiciary will have a time-tested device, the [habeas corpus] writ, to maintain 'the delicate balance of governance' that is itself the surest safeguard of liberty." Boumediene v. Bush, 553 U.S. 723, 745 (2008) (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 536 (2004)).

In Boumediene v. Bush, the Supreme Court addressed the constitutionality under the Suspension Clause of the 2005 Detainee Treatment Act ("DTA") and the Military Commissions Act. 553 U.S. at 732-33. The MCA mandated that "no court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus." 28 U.S.C. § 2241(e)(1). The DTA provided alternative procedures under which the detainees could challenge their detention and limited review of those procedures to the jurisdiction of the courts of appeals. See Boumediene, 553 U.S. at 777. Under the DTA, however, courts of appeals had "jurisdiction not to inquire into the legality of the detention generally, but only to assess whether the combatant status review tribunal ("CSRT") complied with the 'standards and procedures specified by the Secretary of Defense' and whether those standards and procedures [we]re lawful." Id. With this minimal amount of judicial review in mind, the Supreme Court held the procedures set forth in the DTA for review of detainees' status were "not an adequate and effective substitute for habeas corpus," and therefore the jurisdiction-stripping provision of the MCA "operate[d] as an unconstitutional suspension of the writ [of habeas corpus]." Id. at 732-33.

The Supreme Court explained that, to determine whether an alternative procedure sufficiently "entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law," courts should look to "the sum total of procedural protections afforded to the

detainee at all stages, direct and collateral." Id. at 779, 783. In that context, the Court stated that, "for the writ of habeas corpus, or its substitute, to function as an effective and proper remedy," the court conducting "the habeas proceeding must have the means to correct errors that occurred during the CSRT proceedings." Id. at 786. Because the DTA precluded the courts of appeals from admitting "newly discovered evidence that could not have been made part of the CSRT record," and because such evidence could be "critical to the detainee's argument that he is not an enemy combatant and there is no cause to detain him," the court found the DTA's review provisions were not "an adequate substitute for the writ of habeas corpus." Id. at 792.

In habeas proceedings challenging prolonged detention under 8 U.S.C. §§ 1225 and 1226, courts generally grant relief in the form of bond hearings, at which the government has the burden of proof to establish that the alien is a flight risk or a danger to the community to justify further detention. See, e.g., Robbins, 715 F.3d at 1133 (construing government's "mandatory detention authority under 1226(c)" as limited to a six-month period, at which time government must provide detainee with bond hearing); Tijani v. Willis, 430 F.3d 1241, 1249 (9th Cir. 2005) (ordering government to provide detainee with bond hearing); Rodriguez v. Holder, No. CV 07-3239, 2013 WL 5229795, at *3 (C.D. Cal. Aug. 6, 2013) (noting petitioners detained under § 1226(c) should be afforded bond hearings after six months of detention). If an alien is dissatisfied with his or her bond determination, he or she may file a habeas petition in the appropriate district court. Leonardo, 646 F.3d at 1159.

Having considered these procedures, the Court concludes that prolonged and even indefinite detention under § 1226(c) does not violate the Suspension Clause because such detention is subject to a six-month limit, at which time the government must provide the detainee with a bond hearing. Tijani, 430 F.3d at 1242. And, because the burden is on the government at that time to prove that the detainee is either a flight risk or a danger to the community, the Court finds that such a hearing is an adequate substitute for habeas corpus review. Robbins, 715 F.3d at 1133. Moreover, further

judicial review is provided in that a detainee may challenge a dissatisfactory bond determination by filing a habeas petition in the appropriate district court. Leonardo, 646 F.3d at 1159.

Although Petitioner has been in detention for a prolonged time period, and has been subject to this cycle of removal proceedings, Petitioner has been provided with two separate bond hearings. (ECF No. 12 at 3.) And Petitioner does not now challenge the IJ's determination that Petitioner poses a danger to the community. As such, the Court concludes Petitioner's detention under § 1226(c) does not violate the Suspension Clause.

### E.  Evidentiary Hearing

The Court directed Respondent to "make a recommendation regarding the need for an evidentiary hearing on the merits of the Petition." (ECF No. 5.) Respondent argues an evidentiary hearing is "unnecessary because Petitioner is not entitled to relief based on the undisputed facts of this case." (ECF No. 8 at 10) (citing McCowan v. Nelson, 436 F.2d 758, 761 (9th Cir. 1970)). Petitioner does not address the legal standard, but asserts that, because Petitioner's case "presents a unique and complex history," an evidentiary hearing "would be useful to determine the remedy that would be appropriate for this case where he presents with a serious mental health disorder." (ECF No. 10 at 12.)

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007). If the record precludes habeas relief, the Court is "not required to hold an evidentiary hearing." Id.; see also McCowan, 436 F.2d at 761 (holding that "if on the undisputed facts it appears as a matter of law that petitioner is not entitled to relief, an evidentiary hearing is not required") (citing Wright v. Dickson, 336 F.2d 878 (9th Cir. 1964)).

Here, Petitioner does not dispute the facts of the case, and presents no factual

allegations that, if true, would "entitle [Petitioner] to federal habeas relief." <u>Landrigan</u>, 550 U.S. at 474. Therefore, because "on the undisputed facts it appears as a matter of law that petitioner is not entitled to relief," <u>McCowan</u>, 436 F.2d at 761, the Court finds that an evidentiary hearing on the merits of the Petition is not required.

## CONCLUSION & ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus, (ECF No. 1), is **DENIED**. The Clerk of Court is directed to enter **FINAL JUDGMENT** accordingly and then to **TERMINATE** this case.

DATED: May 13, 2014

HON. GONZALO P. CURIEL
United States District Judge